John F. A. Earley, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department et al., Respondents.

Argued June 8, 1978, before Judges CRUMLISH, JR., BLATT and DiSALLE, sitting as a panel of three. Reargued December 5, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS, BLATT, DiSALLE and CRAIG. Judges WILKINSON, JR. and MACPHAIL did not participate.

*John F. A. Earley*, petitioner, for himself.

*Peter T. Daraskes,* with him *Richard W. Hopkins; Thomas Gary; White and Williams; David T. Kluz,* Assistant Attorney General; *John H. Isom,* Assistant Attorney General; *Guy J. DePasquale,* Assistant Attorney General; and *Robert P. Kane,* Attorney General, for respondents.

OPINION BY JUDGE DISALLE, January 23, 1979:
John F. A. Earley (Earley) filed this Petition for Review from a determination by the Pennsylvania Insurance Commissioner (Commissioner) dated March 21, 1977. The Commissioner ruled that the decision made by Home Indemnity Insurance Co. (Insurer) not to renew Earley's automobile insurance was based on reasons valid under the law, and therefore refused to disturb the Insurer's decision. The case was originally heard by a panel of judges of this Court, and was later listed for reargument before the Court en Banc.

On January 27, 1977, the Insurer sent Earley written notice that his automobile insurance would not be renewed after its expiration date of March 1, 1977. The Insurer stated in the notice that the frequency

of Earley's claims was the reason for its decision. In support of its position, the Insurer cited four incidents which involved vehicles owned by Earley.[1]

Upon receipt of this notice, Earley immediately filed a petition with the Pennsylvania Insurance Department contesting the non-renewal. The Insurance Department, pursuant to 31 Pa. Code §59.7, assigned the matter to a Department investigator. The investigator thereafter requested and received from the Insurer more detailed information on each of the four incidents cited in its notice of non-renewal. After consideration of this additional information, the investigator advised Earley that the Insurer's decision not to renew his policy was not violative of Section 3 of the Act of June 5, 1968 (Act No. 78), P.L. 140, 40 P.S. §1008.3, pertaining to the cancellation of, refusal to write, and the refusal to renew automobile insurance,[2] and that the decision would not be disturbed.

Upon notification of the investigator's decision, Earley requested and received a hearing before the

---

[1] Specifically, the Insurer listed the following incidents and resulting claims in support of its decision:
1. December 15, 1975 — collision — intersectional — property damage liability $2,392.
2. July 6, 1975—collision—hit while parked—property damage $323.
3. August 3, 1972 — collision — intersectional — other insurance company paid.
4. February 10, 1970 — collision — intersectional — property damage liability $488—bodily injury liability $1,000.

[2] Section 3 of Act No. 78, 40 P.S. §1008.3, provides:

No insurer shall cancel or refuse to write or renew a policy of automobile insurance solely because of the age, residence, race, color, creed, national origin, ancestry or lawful occupation (including the military service) of anyone who is or seeks to become insured or solely because another insurer has refused to write a policy, or has cancelled or has refused to renew an existing policy in which that person was the named insured.

Commissioner pursuant to 31 Pa. Code §59.7. On March 14, 1977, the Commissioner's Hearing Officer received testimony and other evidence on the matter. At this hearing, Earley argued that the actual reason his insurance was not renewed was because he was Irish and Catholic, and because he had four children of driving age. He contended, therefore, that the Insurer's decision not to renew his policy was invalid under Section 3 of Act No. 78.

In an effort to prove his case, Earley attempted to demonstrate that not all of the four incidents cited by the Insurer should have been charged against him. He argued that since the 1970 accident occurred nearly seven years prior to the Insurer's decision not to renew his policy, it was improper to consider the incident as relevant to the Insurer's decision. He pointed out that, of the three remaining accidents, one was the fault of the other driver involved, and another was a hit and run which occurred while his car was parked and unattended. He contended that the only accident which was properly considered by the Insurer was that which occurred on December 15, 1975, resulting in a $2,392 claim against him. Earley concluded that with only one chargeable accident in seven years, the actual reason for the non-renewal of his insurance must have been either his creed, national origin, or the age of his children. Non-renewal on the basis of any one of these reasons violates Section 3 of Act No. 78.

The Insurer's records showed that over the last seven years it had consistently issued an insurance policy to Earley and his family. These policies included all of his children as each became of driving age. It was not until the last accident that his insurance was cancelled. A representative for the Insurer testified that such a frequency of claims met its non-renewal threshhold. Once this threshhold was reached, the Insurer would review an insured's complete rec-

ord to determine whether non-renewal was appropriate. The representative further testified that religion, national origin, and the age of Earley's children played no part in its decision not to renew his policy.

Based on the evidence, the Commissioner found that Earley presented no evidence tending to prove that the Insurer had based its decision not to renew his policy on any factor prohibited under Section 3 of Act No. 78. He concluded that the Insurer's decision not to renew Earley's policy was valid, and permitted the Insurer to terminate the policy fifteen days from the date of his order. Thereafter, Earley filed this Petition for Review and obtained a stay of the Commissioner's order from this Court on June 2, 1977, pending the Petition's outcome.

We note initially that Earley's principal argument on this appeal is that the Insurer's decision not to renew his policy violated Section 5(a)(9) of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. §1171.5(a)(9). A thorough review of the record indicates that not only was this question not raised below, it was not set forth in Earley's Petition for Review filed in this Court.[3] In

---

[3] In his claim letter filed with the Insurance Department, Earley states: ". . . [the] real reason the insurance company refuses to renew the policy is solely because of consumer's age, residence, race, color, creed, national origin, family, ancestry or lawful occupation." At the hearing before the examiner, the transcript reveals the following:

*Mr. Djerf*—Is it my understanding that the charge or the alleged violation taking place is religious discrimination?

*Mr. Earley*—Exactly.

*Mr. Djerf*—And it's because you're Catholic or Irish Catholic.

*Mr. Earley*—Yes.

*Mr. Djerf*—Both?

*Mr. Earley*—Both and/or either.

the absence of any explanation as to why Earley (who is a practicing lawyer) did not raise this issue below, we will not address it here. *See* the Administrative Agency Law, 2 Pa. C.S. §703(a); *Colonial Gardens Nursing Home, Inc. v. Department of Health*, 34 Pa. Commonwealth Ct. 131, 382 A.2d 1273 (1978).

The sole question which Earley properly preserved on appeal relates to the Commissioner's determination that the Insurer's decision not to renew his insurance did not violate Section 3 of Act No. 78. Specifically, we are asked to consider whether the Commissioner's findings of fact are supported by substantial evidence and whether his ultimate conclusion comports with law.

A careful review of the record shows that the Comsioner's findings of fact are so supported and that his conclusion does comport with law. Earley does not contend that any one of the four incidents did not occur. Indeed, while he strenuously argues that he and his family members were not at fault in several of the incidents and that the magnitude of the claims arising therefrom was so limited as not to materially alter the Insurer's risk, we fail to see how these arguments bear on the consideration of an alleged violation of Section 3 of Act No. 78. Simply put, Earley does not present any evidence tending to show that the Insurer's action was based on any of the discriminatory factors proscribed by Section 3 of Act No. 78.

His own testimony demonstrated that the Insurer issued policies covering him and his children as they

---

*Mr. Djerf*—So it's race and/or national origin and religion?

*Mr. Earley*—That's right.

Furthermore, in his Petition to this Court, the only violation charged by Earley refers to Act No. 78. There is no allegation in the Petition for Review of a violation of the Unfair Insurance Practices Act.

became eligible to drive,[4] and that the Insurer's ultimate refusal to renew the insurance occurred only after the most recent accident and the subsequent review of his claim history. The Insurer's representative testified that this review procedure was activated by the frequency of claims received from Earley, irrespective of the nature thereof, and that the actual review itself was conducted without reference to religion, national origin or the age of Earley's children. We are satisfied that the Department's decision was proper and therefore will affirm.

### ORDER

AND Now, this 23rd day of January, 1979, the Order of the Insurance Commissioner, dated March 21, 1977, is hereby affirmed; the Home Indemnity Insurance Company may terminate, consistent with the Stay Order entered by this Court at No. 694 C.D. 1977 on June 2, 1977, any automobile insurance policy currently issued to John F. A. Earley.

---

[4] In this regard, the record reveals the following:

*Miss Battisti*—Well, your one boy, you said is 20 now, he's been driving about four (4) years.

*Mr. Earley*—That's right, they all went to driver training school.

*Miss Battisti*—And they still, from four (4) years ago, they still kept renewing your policy until the last incident.

*Mr. Earley*—That's correct.